IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIA STEPHENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-22-00479-JD |
| WEST COAST LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**ORDER**

Plaintiff Julia Stephens, as the primary beneficiary of a life insurance policy, sues Defendant West Coast Life Insurance Company ("West Coast") for breach of the insurance contract over West Coast's alleged failure to pay Stephens the full policy benefits. West Coast filed the Motion to Dismiss ("Motion") [Doc. No. 6], arguing that an Oklahoma statute allows Stephens to receive only half the policy benefits and that a marital settlement agreement between Stephens and her now deceased ex-husband entitles Stephens to only half the policy benefits. Stephens responded in opposition to the Motion [Doc. No. 8], and West Coast replied ("Reply") [Doc. No. 9].

The Court concludes Stephens has stated a breach of contract claim against West Coast over the policy and therefore denies the Motion.

**I.   Background**

Julia Stephens was formerly married to Paul Crist, who was covered under a $300,000 life insurance policy issued by Defendant West Coast. Compl. [Doc. No. 1] ¶¶ 5–6. Crist designated Stephens as the primary beneficiary of the policy's death

benefits. *Id.* ¶ 7. When Stephens and Crist divorced, they executed a Marital Settlement Agreement ("MSA"). *Id.* ¶ 8. It states: "Husband owns the following life insurance policy naming Wife as beneficiary: [listing information for West Coast and policy number]. Husband agrees that Wife shall remain a fifty percent (50%) beneficiary of the . . . life insurance policy, until such time as [their minor child] reaches the age of majority." [Doc. No. 6-1] at 9;[1] *see* Compl. ¶ 9. Ultimately, the District Court of Canadian County, Oklahoma entered a decree of divorce, which incorporated the MSA, formalizing the divorce of Stephens and Crist. Compl. ¶ 10.

Stephens alleges that Crist never removed her as a primary beneficiary of the policy's benefits or attempted to reduce her beneficiary percentage to less than 100%. *Id.* ¶ 11. Crist died in December 2021, and Stephens submitted a claim for the policy's death benefits as the primary beneficiary. *Id.* ¶¶ 12–13. West Coast paid Stephens $150,000— only half of the policy's benefits. *Id.* ¶ 14. Stephens then sent a letter to West Coast appealing the decision to pay her only half of the policy's benefits. *Id.* ¶ 15. Without explaining the basis for its decision, West Coast replied that Stephens's claim was paid in full. *Id.* ¶ 16.

Stephens asserts a claim against West Coast for breach of contract. She claims she is entitled to the full $300,000 policy benefits, as the primary beneficiary, and that West Coast breached the insurance contract by failing to pay her the full death benefits.

---

[1] The Court uses CM/ECF page numbering.

**II.     Standard of Review**

In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To achieve 'facial plausibility,' a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Acosta v. Jani-King of Okla., Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under this standard, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citations and quotation marks omitted). In resolving a motion to dismiss, the court may consider (1) documents incorporated by reference in the complaint; (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents'

authenticity;" and (3) "matters of which a court may take judicial notice." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citations and quotation marks omitted).[2]

### III. Discussion

West Coast argues that because of Oklahoma's revocation-upon-divorce statute, Okla. Stat. tit. 15, § 178, Stephens is entitled to only half of the proceeds, and thus that it did not breach the contract.

Section 178(A) operates to revoke provisions in favor of a former spouse in life insurance contracts. It states:

> If, after entering into a written contract in which a beneficiary is designated or provision is made for the payment of any death benefit (including life insurance contracts, annuities, retirement arrangements, compensation agreements, depository agreements, security registrations, and other contracts designating a beneficiary of any right, property, or money in the form of a death benefit), the party to the contract with the power to designate the beneficiary or to make provision for payment of any death benefit dies after being divorced from the person designated as the beneficiary or named to receive such death benefit, all provisions in the contract in favor of the decedent's former spouse are thereby revoked. . . . [T]he decedent's former spouse shall be treated for all purposes under the contract as having predeceased the decedent.

*Id.*

Section 178(B) lists exceptions where § 178(A) is inapplicable to revoke provisions favorable to a former spouse in contracts providing death benefits. Relevant

---

[2] West Coast attached the MSA [Doc. No. 6-1] and divorce decree [Doc. No. 6-2] to its Motion. The Complaint refers to these documents, and they are central to the dispute. Neither party disputes the authenticity of either the MSA or divorce decree, and the Court will consider them in resolving the Motion.

here, § 178(B) provides that § 178(A) "shall not apply . . . [i]f the decree of divorce . . . contains a provision expressing an intention contrary to" § 178(A).

Stephens contends that this exception is applicable to prevent the revocation of Crist's designation of her as primary beneficiary because the provision regarding the life insurance policy in the MSA, which was incorporated into the divorce decree by the state district court, expresses an intention contrary to revocation under § 178(A). Although West Coast does not dispute that the MSA expresses a contrary intention, and thus that the exception is at least applicable to some extent, it does dispute the scope to which the exception applies. West Coast argues that the MSA "expressly states that Plaintiff is to receive only 50% of the Policy death benefit," and thus that § 178(A) operates to partially revoke the Plaintiff's designation as beneficiary of the other 50% of the life insurance proceeds. Motion at 7 ("Oklahoma's automatic revocation statute operated to revoke Plaintiff's designation as beneficiary of the 50% portion of the death benefit at issue in this lawsuit."); *see also* Reply at 6 ("[Plaintiff's] interest in the remaining fifty percent was revoked pursuant to 15 O.S. § 178.").

West Coast points the Court to no supporting authority for the proposition that the revocation-upon-divorce statute applies to partially revoke beneficiary designations in favor of former spouses. The Court must look to the language of § 178 to determine if the statute applies in such manner.

Under Oklahoma law, the objective of statutory interpretation is to determine legislative intent. *Magnum Energy, Inc. v. Bd. of Adjustment for Norman*, 510 P.3d 818, 820 (Okla. 2022).

> The goal of any inquiry into the meaning of a statutory enactment is to ascertain and give effect to the intent of the legislature. The law-making body is presumed to have expressed its intent in a statute's language and to have intended what the text expresses. If a statute is plain and unambiguous, it will not be subjected to judicial construction, but will receive the effect its language dictates. Only where the intent cannot be ascertained from a statute's text, as when ambiguity or conflict (with other statutes) is shown to exist, may rules of statutory construction be employed.

*Id.* (quoting *Yocum v. Greenbriar Nursing Home*, 130 P.3d 213, 219 (Okla. 2005)). "Legislative intent is to be first sought in the language of the statute and when that intent is plainly expressed so that the meaning of the statute is clear there is no room for judicial construction and the statute must be followed without further inquiry." *Ghoussoub v. Yammine*, 518 P.3d 110, 114 (Okla. 2022) (alterations omitted) (quoting *McNeill v. City of Tulsa*, 953 P.2d 329, 332 (Okla. 1998)).

West Coast has not identified any part of § 178 that is ambiguous. Therefore, the Court will give § 178 the effect its language dictates.

The plain language of § 178 does not support partial revocation in the manner advocated by West Coast. Section 178(A) states that upon divorce, "*all* provisions in the [insurance] contract in favor of the decedent's former spouse are thereby revoked." (emphasis added). But, under § 178(B), if a divorce decree includes a provision with an intention contrary to the revocation of *all* provisions favoring the former spouse, it expresses an intention contrary to § 178(A). And § 178(B) states in plain terms that § 178(A) "shall not apply" in such circumstances.

The language of § 178(B) leaves no room for partial application of § 178(A) when an exception applies. The Court is thus not convinced that the plain language of § 178 authorizes partial revocation. Stephens's claim should not be dismissed for this reason.

West Coast also argues that there is no breach of contract because the MSA expresses an intention for Stephens to receive only 50% of the policy benefits and West Coast paid that amount. But Stephens is not suing West Coast for breach of the MSA, and although it is incorporated into the divorce decree, West Coast is not a party to the MSA. Stephens is suing West Coast for breach of the policy because she alleges that she is the primary beneficiary for the total policy benefit and West Coast paid her only half of the policy benefit. Compl. ¶ 27.

West Coast points to *In re Estate of Bruner*, 864 P.2d 1289 (Okla. Civ. App. 1993) for its argument that Crist intended for Stephens to receive only one-half interest in the policy, as—according to West Coast's reading of the MSA—that is the portion assigned to her in the MSA. *See* Motion at 9. Stated another way, West Coast contends that the MSA means West Coast has met its obligations to Stephens under the policy. But *Estate of Bruner* did not involve the same language as the MSA here. *Cf.* [Doc. No. 6-1] at 9 ("Husband owns the following life insurance policy naming Wife as beneficiary . . . . Husband agrees that Wife shall remain a fifty percent (50%) beneficiary of the above listed life insurance policy, until such time as Child reaches the age of majority.").

West Coast does not attempt to analyze the language of the MSA—including "policy naming [Stephens] *as beneficiary*" and that "[Stephens] *shall remain* a fifty percent (50%) beneficiary"—under contract interpretation principles, or what that

7

language means for whether it has met its obligations under the policy.³ *Cf.* Fed. R. Civ. P. 7(b)(1) (the movant must "state with particularity the grounds for seeking the order"). Ultimately determining whether West Coast breached the policy or whether Stephens suffered any damages from the alleged breach may require an interpretation of the MSA or of the divorce decree (which incorporates the MSA) as a court judgment.

However, at this pleading stage, the Court asks only whether Stephens has stated a claim for breach of the policy—which is her only claim against West Coast. The Court finds she has. She has alleged that West Coast breached the insurance policy by failing to pay her the full policy benefit amount as the primary beneficiary. *See* Okla. Jury Instr. No. 23.1 (stating that the elements to recover on the claim of breach of contract are the contract, breach, and damages).

Accordingly, the Court concludes that West Coast's argument about the MSA expressing the intent of Crist do not entitle it to dismissal for failure to state a claim.

### IV.   Conclusion

For these reasons, the Court DENIES West Coast's Motion to Dismiss [Doc. No. 6].

IT IS SO ORDERED this 3rd day of March 2023.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

³ Neither party attached a copy of the policy to the briefing on the Motion.